Matthew J. Scola, as Trustee in Bankruptcy of Daniel A. Morgan, Bankrupt (Successor to Williams in the Village, Inc.), Respondent-Appellant, v Daniel A. Morgan et al., Appellants-Respondents.

First Department, February 1, 1979

### APPEARANCES OF COUNSEL

*Arnold Bennett Glenn* for appellants-respondents.

*Marvin S. Sklamberg* of counsel (*Isidore Ehrlich* with him on the briefs), for respondent-appellant.

### OPINION OF THE COURT

FEIN, J.

Plaintiff and defendants cross-appeal from a judgment entered following a nonjury trial in favor of plaintiff trustee in bankruptcy of defendant Daniel Morgan (Morgan), in the sum of $57,020.97 against defendants, declaring certain conveyances by Morgan to be constructively fraudulent and directing the corporate defendant to convey title to such properties to plaintiff. Plaintiff appeals from that part of the judgment which failed to find actual fraud pursuant to section 276 of the Debtor and Creditor Law and failed to grant concomitant reasonable attorneys' fees in accordance with section 276-a of the Debtor and Creditor Law and additional costs pursuant to CPLR 8303 (subd [a], par 2). Defendants appeal from the entire judgment.

The action was brought to set aside as fraudulent against creditors four conveyances of real property made by Morgan to the corporate defendant, Morgan Builders, Inc. The action was originally brought by Williams in the Village, Inc. (Williams), Morgan's tenant in one of the properties, 7 West 8th

Street, premised on an unsatisfied judgment obtained by Williams against Morgan for extensive damage to Williams' business, resulting from the explosion of a steam boiler on December 5, 1966. Plaintiff trustee was substituted as party plaintiff after Morgan had obtained an order from the Federal court in New Jersey in Morgan's bankruptcy proceedings, enjoining Williams from continuing the action.

■ The trial court's judgment in favor of the plaintiff was premised on constructive fraud under sections 273 and 274 of the Debtor and Creditor Law and not actual fraud pursuant to section 276 of the Debtor and Creditor Law. We affirm the trial court's findings of fact. However, we have concluded that such findings establish actual fraud and not merely constructive fraud.

The individual defendants were apparently aware of the extent of the damage to the building shortly after the occurrence. Morgan was also made aware of the fact that Williams' insurance was insufficient to cover the loss and that Williams would look to Morgan's liability coverage, since the explosion allegedly resulted from Morgan's negligence. At the time, Morgan acknowledged that he had only $5,000 liability coverage and that he was underinsured.

On December 21 and 23, 1966, 16 days after the explosion, Morgan executed deeds to the properties conveying title in the four parcels to the corporate defendant. The assessed valuation of the four parcels at that time was $333,000. Morgan Builders, Inc. although incorporated on October 7, 1966, prior to the explosion, apparently had no assets until the transfer of the four parcels in late December, 1966, shortly after the loss. Nor had a corporate bank account been opened until December 9, 1966, four days after the explosion. Thus, for more than two months, the corporate defendant existed as a mere shell, with no real assets.

We are in agreement with the trial court's findings that the transfer of the properties was effected with intent to hinder, delay or defraud creditors. However, under the circumstances, we find that defendant Morgan proceeded with actual intent, as opposed to intent presumed in law, to defraud, hinder and delay present or future creditors. The transfers were made without consideration and, as a result, Morgan was rendered insolvent. The corporate defendant, controlled by Mrs. Morgan, although incorporated prior to the loss, had no assets until the subject transfers had been effected late in December,

1966, slightly more than two weeks after the explosion. It was not until four days after the occurrence that a corporate bank account was opened, thus giving some semblance of life to the corporation. Whether or not Morgan intended the corporate form as a fraud on creditors when the corporation was organized is irrelevant. The flurry of activity immediately following the loss, with an awareness on the part of Morgan that Williams intended to look to him for compensation, is a relevant consideration. Also significant is the fact that subsequent to the transfers Morgan continued to treat the properties as his own. He continued to operate and manage the properties and Morgan's company, Morgan Realty, not the corporate defendant, collected and deposited rent until September, 1967. In this connection, we observe that in January, 1967, Morgan signed a petition in a landlord-tenant proceeding as owner and managing agent of one of the buildings.

Under the circumstances, the proof adduced is more than sufficient to require a finding that Morgan used the corporate defendant as a vehicle to effect the transfer of his major assets in order to avoid, hinder, delay and defraud his creditors. He knew at the time of the substantial claim made by Williams and that he had insufficient insurance coverage. The proximity of the transfers to the loss is most pertinent, as is the fact that there was no consideration for the transfers. The transfer of the parcels clearly resulted in Morgan's insolvency. He also concealed the fact that the conveyances had been made for at least eight months, during which time he held himself out as owner and continued to manage, enjoy and use the properties.

In *Sabatino v Cannizzaro* (243 App Div 20) an action was brought by a judgment creditor of defendants, husband and wife, to set aside as fraudulent, certain conveyances of real and personal property by defendants to their 19-year-old son, also named as defendant in the action. The conveyances of realty, supported by nominal consideration, and the transfer without any consideration of the parents' stock interest in defendant corporation, which held title to other real property, enabled the parties thereby to become divested of all their property interests. The transfers were effected about one month prior to entry of plaintiff's judgment in the underlying action brought to recover on a loan to the parents, evidenced by a note. This court *(supra,* p 22) found the evidence sufficient to establish a deliberate attempt by defendants to place their property beyond the reach of creditors and held: "The

plaintiff's proof of an actual fraudulent intent of the defendants made a *prima facie* case and shifted to the defendant-grantee the burden of establishing his good faith in the transfer. The fact that the conveyances in question were voluntary and were made without consideration while the defendant * * * was indebted to the plaintiff, gives rise to the presumption that they were made in fraud of creditors."

Similarly here, defendants failed to refute the proof offered by plaintiff to establish that the parcels were transferred with intent to defraud, hinder and delay creditors.

The fact that the fraud was perpetrated on one other than plaintiff is neither relevant nor dispositive. Plaintiff, as trustee, stands in the shoes of the creditor for whom substitution was directed. As was observed by the Appellate Division, Second Department, in *Burch v Jeruss* (281 App Div 991, 992-993): "Under such circumstances the conveyance was in actual fraud of a creditor; there being no consideration therefor and the grantor being rendered insolvent thereby. *(American Bulb Co. v. Spiwack,* 248 App. Div. 753, affd. 275 N.Y. 477; *Sabatino v. Cannizzaro,* 243 App. Div. 20; *Ga Nun v. Palmer,* 216 N.Y. 603.)* While the creditor hindered, delayed, and defrauded was one other than plaintiff, he stands in the place of his predecessor, the original plaintiff in this action, which was a present creditor whose rights were injuriously affected by the same transfer. (Cf. Debtor and Creditor Law, § 276.)"

▉ The trial court dismissed the defense of the Statute of Limitations. We agree with the finding that plaintiff and Williams did not and could not acquire knowledge as to the conveyances until after supplementary proceedings had been commenced. Although the conveyances occurred in December, 1966, the trial court found that Williams did not discover, and could not with reasonable diligence have discovered, the existence of the conveyances until August, 1973. Williams, who had vacated the premises in April, 1967, reopened its business at 20 West 8th Street. There is no showing that Williams, who was no longer a tenant of Morgan after that date, acquired knowledge of facts indicating a change of title to the premises. The fact that Morgan personally continued to operate and manage the property only served to preclude such a former tenant from acquiring knowledge of the transfer. The action, commenced on October 8, 1973, within two years after discovery of the fraud, was timely. Accordingly, the first affirmative defense of Statute of Limitations was properly dismissed as

insufficient (CPLR 213, subd 8; 203, subd [f]). Furthermore, since a viable claim existed when Morgan was adjudicated a bankrupt on June 15, 1973, and since plaintiff was substituted in the action on September 27, 1974, within two years after the fraud had been or could have been discovered, the action by the trustee was timely under subdivision (e) of section 29 of title 11 of the United States Code. The statute in part provides: "A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy."

■ Nor may the conveyances be sustained under the subsisting separation agreement entered into between Mr. and Mrs. Morgan on February 4, 1965. The agreement required Morgan to "turn over all of his property to his wife". He never did so. The parties showed no real intention to enforce the terms of the agreement and for 22 months Morgan continued to own, manage and control the parcels until shortly after the explosion, when the transfers were completed, evidently to avoid resulting claims. No explanation was offered by Mrs. Morgan for the apparent sudden desire to effect a transfer of the properties to a corporation under her control. Her failure to appear and testify warranted the trial court in drawing the strongest inferences against her and the corporation which the opposing evidence in the record might permit (*Noce v Kaufman*, 2 NY2d 347; *Milio v Railway Motor Trucking Co.*, 257 App Div 640; *Perlman v Shanck*, 192 App Div 179).

■ Accordingly, since we find that the transfers were made "with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors" (Debtor and Creditor Law, § 276), plaintiff's claim for reasonable attorneys' fees under section 276-a of the Debtor and Creditor Law was proper. A hearing is necessary to determine the reasonable value of the legal services rendered. Accordingly, we remand for that purpose.

■ Plaintiff also seeks an additional allowance pursuant to CPLR 8303 (subd [a], par 2). The statute permits the court, in its discretion, to award additional costs "to any party to a difficult or extraordinary case where a defense has been interposed, a sum not exceeding five per cent of the sum

recovered or claimed, or of the value of the subject matter involved, and not exceeding the sum of three thousand dollars". We deem such additional allowance to be justified here by reason of the extraordinary nature of the case, requiring extensive preparatory work to uncover facts necessary to prove Morgan's fraudulent intent. Although the legal issues were neither complex nor intricate by any means, we recognize the substantial time and effort expended to unearth facts to prove the fraud perpetrated by this experienced real estate man.

No duplicate recovery is intended by granting a judgment for a sum of money and directing conveyance of the property to the trustee in order to provide a fund for payment of the money judgment.

Accordingly, the judgment, Supreme Court, New York County (S. LEVY, J.), entered June 7, 1977, should be modified, on the law and the facts, to the extent of substituting a finding of actual fraud under section 276 of the Debtor and Creditor Law in place of the finding of constructive fraud, granting plaintiff's claim for reasonable attorneys' fees under section 276-a of the Debtor and Creditor Law, remanding for a hearing to determine upon requisite and sufficient proof the reasonable value of the legal services rendered, and providing that the value of the property shall be credited against the money judgment and otherwise affirmed, with costs and disbursements to plaintiff. The order, Supreme Court, New York County (S. LEVY, J.), dated May 31, 1977, denying plaintiff's motion for additional costs pursuant to CPLR 8303 (subd [a], par 2) reviewed on the appeal from the judgment, should be reversed, on the law and in the exercise of discretion, the motion granted and the judgment amended to the extent of awarding to plaintiff trustee as additional costs pursuant to CPLR 8303 (subd [a], par 2), the sum of $2,239.22, representing 5% of the sum recovered.

MARKEWICH, LYNCH and SULLIVAN, JJ., concur.

Judgment, Supreme Court, New York County, entered on June 7, 1977, unanimously modified, on the law and on the facts, to the extent of substituting a finding of actual fraud under section 276 of the Debtor and Creditor Law in place of the finding of constructive fraud, granting plaintiff's claim for reasonable attorneys' fees under section 276-a of the Debtor and Creditor Law, remanding for a hearing to determine upon

requisite and sufficient proof the reasonable value of the legal services rendered, and providing that the value of the property shall be credited against the money judgment and otherwise affirmed, and the plaintiff-respondent-appellant shall recover of the defendants-appellants-respondents $75 costs and disbursements of these appeals.

Order, Supreme Court, New York County, dated May 31, 1977, denying plaintiff's motion for additional costs pursuant to CPLR 8303 (subd [a], par 2), reviewed on the appeal from the judgment, unanimously reversed, on the law and in the exercise of discretion, the motion granted and the judgment amended to the extent of awarding to plaintiff trustee as additional costs, pursuant to CPLR 8303 (subd [a], par 2), the sum of $2,239.22, representing 5% of the sum recovered.